United States District Court
for the
Southern District of Florida

| Damion Samuel Rose, Plaintiff, | ) | |
| --- | --- | --- |
| | ) | |
| v. | ) | Case No. 17-61602-CIV-SCOLA |
| | ) | |
| Lee Ann Nicole Blake, | ) | |
| Defendant. | ) | |

**<u>Final Order Granting Petition Under Hague Convention to Return Child</u>**

This matter is before the Court after a hearing on the merits of the Plaintiff's Complaint and based on the testimony, exhibits and argument proffered therein the Court finds the following:

**I.  Background**

1. This action is brought by DAMION SAMUEL ROSE, ("Mr. Rose") a legal resident of Belgium, to secure the return of his six-year-old son, D.A.R., ("The Child"), who was, without Petitioner's consent or acquiescence, wrongfully removed from Belgium and brought to the Southern District of Florida by the Child's Mother, LEE ANN NICOLE BLAKE ("Ms. Blake").

2.     This Petition is filed pursuant to the Convention on the Civil Aspects of International Child Abduction (the "Hague Convention" or the "Convention")[1] and the International Child Abduction Remedies Act ("ICARA").[2] The Hague Convention came into effect in the United States of America on July 1, 1988, and has been ratified between, among other Contracting States, the United States of America and Belgium as of October 25, 1980.

3. The objects of the Hague Convention are:
Article 1(a):   To secure the prompt return of Child wrongfully removed or
retained in and Contracting State; and
Article 1(b):   To ensure that rights of custody and of access under the law
of one

Contracting   State   are   effectively   respected   in   other Contracting States.

*(Id.)*

---

[1] Oct. 25, 1980, T.I.A.S. No. 11,670 at 1,22514 U.N.T.S. at 98, *reprinted in* Feder. Reg. 10494 (1986).
[2] 42 U.S.C. §§11601 – 11610 (2011).

4. The Hague Convention authorizes a federal district court to determine the merits of a claim for the wrongful removal or retention of a child; it does not, however, permit the district court to consider the merits of the underlying custody dispute.

5. This Court has jurisdiction over this case pursuant to 42 U.S.C. §11603(a) (jurisdiction under the Hague Convention) and 28 U.S.C. § 1331 (federal question jurisdiction). Venue is proper pursuant to 42 U.S.C. § 11603 and 28 U.S.C. § 1391(b) because, the Child and Respondent were residing in the city of Davie, Broward County, Florida in the Southern District of Florida.

6. Mr. Damion Rose, the Petitioner, is domiciled at Avenue de I'Observatoire 3, box 9, 1180 Uccle, Belgium.

7. Mr. Damion Rose, was born on December 27, 1984, and Ms. Lee-Ann Blake, the Defendant, was born on August 13, 1985, met in Jamaica and have had a relationship of which a child, D.A.R., was born in New York on January 17, 2011.

8. The parties separated in 2013 and Ms. Blake subsequently settled in the United States for a few months with the common child.

9. Afterwards, Ms. Blake returned to Jamaica, where the applicant asked her to organize the living arrangements of the common child in order to enable him to spend some time with his son despite their separation, which Ms. Blake refused.

10. In 2014, Mr. Rose moved to Belgium and the parties reached a verbal agreement, so as to enable D.A.R. to spend holidays with his father.

11. On the agreed date however, Ms. Blake opposed the child's stay in Belgium and threatened to deprive Mr. Rose of any contact with the child if she was not authorized to stay with him in Belgium.

12. In 2014, Ms. Blake and D.A.R. settled in Belgium and the parties decided to give themselves a chance to live together again.

13. On February 10, 2015, they concluded a declaration of legal cohabitation, to which they have not put an end.

14. A few months later, the couple separated again and the parties tried to reach an agreement on the living arrangements of the child. Mr. Rose insisted on equal shared living arrangements.

15. Since the parties could not reach an agreement, a family mediation was launched in November 2016.

16. In early 2017, the mediation came to an end without any positive result. A verbal agreement was however reached according to which the child would have his residence with his mother two weeks per month, including the weekends, and with his father one week per month and two weekends.

17. Since Ms. Blake could scarcely comply with this agreement, Mr. Rose submitted a request to the Family Court aiming at obtaining a decision on parental responsibility.

18. Moreover, Ms. Blake informed the Plaintiff on several occasions that she intended to return to Jamaica with the common child. The Plaintiff opposed such intention.

19. Both parties and their lawyers agreed to meet on April 24, 2017 prior to the hearing scheduled on May 3, 2017 before the Brussels Family Court in the framework of the pending proceedings regarding parental responsibility.

20. On April 24, 2017 in the morning, Ms. Blake's lawyer informed the Mr. Rose's attorney that Ms. Blake could not be present because she was in the United States with the child.

21. On April 24, 2017 in the evening, Mr. Rose met with Ms. Blake's lawyer, who informed him that his client would return to Belgium on May 21, 2017.

22. Considering this return date, Mr. Rose agreed to have the hearing scheduled on May 3, 2017 postponed to June 28, 2017.

23. However, Ms. Blake and the Child did not return on the expected date and the plaintiff did not receive any news of his son since July 22, 2017.

24. Ms. Blake and D.A.R. reside at her cousin's domicile, Ms. Yanique A. McLaren at: 14058 S. Forest Oak CIR, Davie, FL 33325-6718.

25. Subsequent to the wrongful removal of the Child by the mother, the Belgium Court issued an Order placing sole custody in the father, Damion Samuel Rose.

26. Thereafter, Mr. Rose retained counsel who served the Verified Complaint on the Respondent (DE-1). As well as a Motion and Memorandum in Support of said temporary restraining order (DE-8-9). The Court then issued an Order (DE-11) indicating that it would hear argument on Plaintiff's motion requesting injunctive relief and the merits of the Plaintiff's Complaint on August 18, 2017 at 8:30 a.m. and commanding the United States Marshals to seize Respondent's and Child's passports.

27. On August 17, 2017, the Defendant filed her Response to the Verified Complaint and Petition Under Hague Convention for Return of the Child to Plaintiff/ Petitioner (DE-17).

28. In her response, the Defendant asserts that:

   a. The Defendant LEE ANN NICOLE BLAKE, (herein after "Ms. Blake") notified the Plaintiff DAMION SAMUEL ROSE, (hereinafter "Mr. Rose") in January of 2017, of her intent to travel with the parties' child, D.A.R. to the United States for her niece's graduation from college.

   b. As the date got closer, Ms. Blake sent an itinerary to her attorney to send to Mr. Rose's attorney again advising him of her travel plans.

   c. Ms. Blake left for Florida on April 21st, 2017 with the intent to return to Belgium on May 21st, 2017, as she was still employed in Belgium and was about to complete her Masters degree at the Universite Libre de Bruxelles and her thesis was due.

   d. Mr. Rose was well aware that Ms. Blake was going to be traveling with the parties' child.

   e. After Ms. Blake arrived in U.S., Mr. Rose began to threaten her, accusing her of kidnapping the child and telling her she was going to jail once she returned to Belgium.

   f. Furthermore, Mr. Rose, went ahead and had his girlfriend, Aoife Candren, rent out Ms. Blake's apartment, making it impossible for her to return since she has no friends or family in Belgium to reside with.

   g. Ms. Blake was in fear of Mr. Rose, because he was making threats to her and had been violent to her many times in the past in front of the parties' child.

   h. During their relationship, Ms. Blake was a victim of domestic violence at the hands of Mr. Rose. There were numerous instances where Mr. Rose would hit her, slap her choke her, and even bang her head against the floor in front of the parties' child.

   i. Mr. Rose would tell Ms. Blake that if she reported the incident or filed charges against him, he would end their co-habitation, which would force Ms. Blake to leave Belgium (Mr. Rose was there on a work permit) and separate her from her son.

j. The Defendant further asserts that pursuant to Article 13 of the Hague Convention, "Notwithstanding the provisions of the preceding Article, the judicial or administrative authority of the requested State is not bound to order the return of the child if the person, institution, or other body which opposes its return establishes that-

   i. The person, institution or other body having the care of the person of the child was not actually exercising the custody rights at the time of the removal or retention or had consented to or subsequently acquiesced in the removal or retention; or

   ii. There is a grave risk that his or her return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation.

Furthermore, Article 20 of the Hague convention states "The return of the child under the provisions of Articles 12 may be refused if this would not be permitted by the fundamental principles of the requesting State relating to the protection of human rights and fundamental freedoms.

29. The Court has taken testimony from the parties and hereby credits the Plaintiff's testimony and rejects the Defendant's testimony and therefore rejects the assertions of the Defendant set forth in her Response to the Verified Complaint and Petition Under the Hague Convention for Return of the Child to Plaintiff/Petitioner.

30. The Court therefore finds as follows:

   a. The Child's habitual residence at the time of the alleged wrongful removal or retention was Belgium.

   b. Here, the facts of the Verified Complaint (DE-1) combined with the testimony proffered at the hearing demonstrate that both Rose and Blake were persons entitled to fix the place of the Child's resident at the time the Child was removed from Belgium as Belgium. There is no evidence that Rose lost his custodial parental rights as the father of the Child. In fact, the opposite is true; a Belgium Court vested sole custody in Mr. Rose after Ms. Blake left the jurisdiction of Belgium with the Child, surreptitiously removing the Child from Belgium and traveling to the United States. Given these facts, the Court finds that Rose maintained his custodial rights as the father of the Child and never agreed to relocate the Child to the United States. Thus, Belgium is the habitual residence of the Child.

c. But the analysis does not end once the habitual residence has been identified. There are "several exceptions to the rule that a wrongfully removed or retained child must be returned to his or her place of habitual residence." *De La Riva v. Soto*, 183 F. Supp. 3d 1182, 1186–87 (M.D. Fla. 2016).[3] One such exception relevant to the current case is that a court is not bound to return a child to his habitual residence when the respondent "shows by clear and convincing evidence that 'there is a grave risk that his or her return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation.'" *Id.* (quoting the Convention art. 13(b)).

d. At the hearing, Defendant Blake asserted that Mr. Rose was well aware that she was going to be traveling to the United States with the parties Child and that after she arrived in the United States, Mr. Rose began to threaten her accusing her of kidnapping the child and rented her apartment making it impossible for her to return to Belgium. She further testified that on several occasions, Mr. Rose had been violent to her in front of the Child during the past. The Court specifically rejects this testimony. The credible testimony establishes that the parties' relationship was volatile but the Court finds that Mr. Rose never physically threatened or physically harmed either Ms. Blake or the Child.

e. The Court therefore finds that Mr. Rose never acquiesced to the removal of the Child from Belgium and moreover, that there is not a grave risk that the return of the Child would expose the Child to physical or psychological harm or otherwise place the Child in an intolerable situation.

f. Therefore, because the Court finds that Belgium is the habitual residence of the Child, that the Plaintiff never acquiesced in the removal of the Child, that there is no danger to the Child if he is returned to Belgium, and that the Respondent has failed to show cause why the child should not be returned to Belgium, it is

**ORDERED** that the Petition is hereby **granted** and the Child be returned to Belgium under the Hague Convention in the custody of the father.

The Court will allow the Mother the opportunity to return to Belgium with the Child. The Mother must make arrangements to fly to Belgium on a

---

[3] While there are many exceptions, the Eleventh Circuit has emphasized that these are narrow exceptions, and that, even if the respondent establishes one or more of these exceptions, a court may still order the return of a child to his or her habitual residence. *Gomez v. Fuenmayor*, 812 F.3d 1005, 1011 (11th Cir. 2016).

direct flight from Miami to Brussels no later than August 29, 2017. The Father shall pay for the Child's ticket and the Mother shall pay for her own.

On the day before her flight, she shall come to the U.S. Marshal's Office in Miami and if she shows the Marshal the direct flight tickets for her and the Child to Brussels for the next day, the Marshal is authorized to return the Mother's and Child's passports to the Mother.

If for any reason the Mother cannot return to Belgium, she must notify the Father in writing no later than August 23, 2017 so that the Father can make arrangements to return to Miami and pick up the Child on August 29, 2017. By this Order, the Father is authorized to pick up the Child's passport from the U.S. Marshal on August 28, 2017 or August 29, 2017 with proof of a ticket for the child to Brussels and a copy of the written notification from the Mother that she was not going to be taking the Child to Belgium.

A Final Judgment in Petitioner's favor shall be entered, returning the Child to the Father/Plaintiff pursuant to the Certificate of Law concerning parental authority and Belgium Civil Code (Exhibit C in the Complaint). The Father shall submit a proposed Final Judgment no later than August 22, 2017.

The Father shall share time with the child on August 18, 2017 at 6:00 p.m. until August 19, 2017 at 10:00 a.m. Pick up and drop off shall be at the Rainforest Café in Sawgrass Mills Mall.

Until the Child is returned to Belgium, the following terms and conditions of the Court's restraining order remain in full force and effect:

(1) The Defendant, Lee Ann Nicole Blake, is prohibited from removing the minor D.A.R. from the jurisdiction of this Court except for a direct flight from Miami to Brussels on or before August 29, 2017;

(2) No person acting in concert or participating with the Defendant shall take any action to remove D.A.R. from the jurisdiction of this Court except for the Child's travel to Belgium on August 29, 2017.

**DONE** and **ORDERED** in Chambers, Miami, Florida on August 18, 2017.

_____
Robert N. Scola, Jr.
United States District Judge